JOHNSON & PHAM, LLP
Christopher D. Johnson, SBN: 222698
Email: cjohnson@johnsonpham.com
Christopher Q. Pham, SBN: 206697
Email: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
Email: mchaney@johnsonpham.com
Jason R. Vener, SBN: 267941
Email: jvener@johnsonpham.com
6355 Topanga Canyon Blvd., Suite 326
Woodland Hills, California 91367
Telephone: (818)888-7540
Facsimile: (818) 888-7544

Attorneys for Plaintiff
SENNHEISER ELECTRONIC CORPORATION d/b/a SENNHEISER and SENNHEISER ELECTRONIC GMBH & CO. KG

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SENNHEISER ELECTRONIC CORPORATION, d/b/a SENNHEISER USA, a Delaware Corporation, and SENNHEISER ELECTRONIC GMBH & CO. KG, a German Limited Liability Company

Plaintiffs,

vs.

CAROLINE EICHLER, an Individual, APEX SUPPLIERS, LLC, a Florida Limited Liability Company, and Does 1-10, Inclusive,

Defendants.

Case No.: CV12-10809 MMM (PLAx)

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT APEX SUPPLIERS, LLC; MEMORANDUM OF POINTS AND AUTHORITIES;**

[Filed Concurrently with Declaration of Jason R. Vener and [Proposed] Judgment]

Date: July 8, 2013
Time: 10:00 a.m.
Courtroom: 780

TO THE APEX AND TO THE COURT:

PLEASE TAKE NOTICE THAT on July 8, 2013, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 780 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiff SENNHEISER ELECTRONIC CORPORATION, d/b/a SENNHEISER and SENNHEISER ELECTRONIC GMBH & CO. KG ("Plaintiff", "SENNHEISER") will present its motion for entry of default judgment against Defendant APEX SUPPLIERS, LLC ("APEX") for damages and injunctive relief. This application is made pursuant to Rule 55(b) of the *Federal Rules of Civil Procedure* ("*Fed.R.Civ.P.*") which provides for a court ordered default judgment following entry of default by the court clerk under *Fed.R.Civ.P.* 55(a), and pursuant to 15 *United States Code* ("*U.S.C.*") §§1114, 1125(a) and (c), and 17 *U.S.C.* §501(a).

This application is based upon this Notice of Motion for Entry of Default Judgment by Court, the attached Memorandum of Points and Authorities, and the Declaration of Jason R. Vener filed concurrently herewith, the papers and records on file herein, and upon such oral and documentary evidence as may be presented at the hearing of this matter.

DATED: May 3, 2013

JOHNSON & PHAM, LLP

By: ____________________
Jason R. Vener, Esq.
Attorney for Plaintiff
SENNHEISER ELECTRONIC CORPORATION, d/b/a SENNHEISER and SENNHEISER ELECTRONIC GMBH & CO. KG

# TABLE OF CONTENTS

Page

I. FACTUAL BACKGROUND ........ 8

II. LEGAL STANDARD ........ 11

III. ANALYSIS OF EITEL FACTORS ........ 12

A. Prejudice to Plaintiff ........ 12

B. Plaintiff's Substantive Claims are Meritorious ........ 12

C. Sufficiency of Plaintiff's Complaint ........ 12

1. Trademark Infringement Claim ........ 14

(a) Plaintiff's ownership of trademarks at issue ........ 14

(b) Defendant's use of Plaintiff's trademarks in commerce ........ 14

(c) Likelihood of confusion ........ 14

(i) Strength of the allegedly infringed mark ........ 15

(ii) Proximity or relatedness of goods ........ 17

(iii) Similarity of sight, sound, and meaning of marks ........ 18

(iv) Degree to which marketing channels converge ... 18

(v) Type of goods and degree of care consumers are likely to exercise in purchasing goods ........ 19

(vi) Intent of the Defendant in selecting the allegedly infringing mark ........ 19

(vii) Evidence of actual confusion and likelihood that the parties will expand their product line ........ 19

(viii) Conclusion ........ 20

3. Trademark Dilution Claim ........ 20

(a) Plaintiff's ownership of famous marks ........ 20

                   (b) Defendant's commercial use of Plaintiff's Famous Marks ....22

(c) Defendant's use began after Plaintiff's marks were Famous ....22

(d) Defendant's use tarnishes the quality of Plaintiff's marks ....23

D. Sum of Money at Stake ....23

1. **Statutory Damages for Trademark Infringement and Trademark Dilution** ....23

E. **No Possiblity of Dispute Concerning Material Facts** ....24

F. **Default Not Due to Excusable Neglect** ....24

G. **Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's Right to Relief** ....25

**IV. REMEDIES** ....25

A. **Statutory Damages** ....25

B. **Costs** ....28

C. **Attorneys' Fees** ....29

D. **Injunctive Relief** ....29

**V. CONCLUSION** ....31

# TABLE OF AUTHORITIES

**CASES:**

Abraham Zion Corp. v. Lebow,
761 F.2d 93 (2d Cir.1985) ........................................................15

Adobe Systems Inc. v. Brooks,
3 2009 WL 593343 (N.D. 2009) ........................................................27

AMF Inc. v. Sleekcraft Boats,
599 F.2d, 349 (9th Cir,1979) ........................................................ 15, 18, 19

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
174 F.3d 1047(9th Cir. 1999)........................................................13, 14

Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,
F.3d 1194 (9th Cir. 2001) ........................................................27

Eitel v. McCool,
782 F.2d 1472 (9th Cir.1986) ........................................................12

E & J Gallo Winery v. Gallo Cattle,
967 F.2d, 1290 (9th Cir. 1992)........................................................ 14, 15, 17

F.W. Woolsworth Co. v. Contemporary Arts,
344 U.S. 233 (1952) ........................................................26

Horlick's Malted Milk Corp. v. Horluck's, Inc.,
59 F.2d 13 (9th Cir.1932) ........................................................15

Howe Scale Co. v. Wyckoff, Seamans & Benedict,
198 U.S. 118 (1905)........................................................15

Joujou Designs, Inc. v. Jojo Ligne Internationale,
821 F.Supp. 1354 (N.D.Cal.1992) ........................................................16

L.E. Waterman Co. v. Modern Pen Co.,
235 U.S. 88 (1914)........................................................15

Lindy Pen Co. v. Bic Pen Corp.,
982 F. 2d 1409 (9th Cir. 1993) ........................................................29

M2 Software, Inc. v. Madacy Entertainment Corp.,
421 F.3d, 1080 (9th Cir.2005) ........................................................................13

Panavision, Int'l v. Torppen,
141 F.3d 1324 (9th Cir.1998) ........................................................................20

Peer Int'l Corp. v. Pausa Records Inc.,
909 F. 2d 1332 n.3 (9th Cir. 1990) ................................................................26

PepsiCo Inc. v. Cal. Sec. Cans,
238 F.Supp.2d 1178 (C.D. Cal. 2002) ............................................................29

Philip Morris USA, Inc. v. Castworld Products, Inc.,
219 F.R.D. 498 (C.D. Cal 2003) ................................................... 25, 26, 27

Philip Morris v. Shalabi,
352 F.Supp.2d. 1072 (C.D.Cal.2004) ............................................................13

Taylor Made Golf Co., Inc., v. Carsten Sports Ltd.
175 F.R.D. 658 .............................................................................................29

TeleVideo Systems, Inc. v. Heidenthal,
826 F.2d 918 (9th Cir. 1987)..........................................................................12

Toys "R" Us v. Akkaoui,
40 U.S.P.Q. 2d (BNA) 1836 (N.D. Cal. 1996) ...........................................20, 23

**STATUTES:**

Fed. R. Civ. P. 55 .........................................................................................10
Fed. R. Civ. P. 55(a) .......................................................................................10
Fed. R. Civ. P. 55(b)(2) ...............................................................................25, 27
15 U.S.C. §1052(e)(4)(f) ..................................................................................15
15 U.S.C. §1114(1) ....................................................................................14, 29
15 U.S.C. §1116(a) ..........................................................................................29
15 U.S.C. §1117(a) ....................................................................................28, 29
15 U.S.C. §1117(c)(1) ......................................................................................24
15 U.S.C. §1117(c)(2) ......................................................................................24

15 U.S.C. §1117(e) .......... 29
15 U.S.C. §1125(a) .......... 13, 28
15 U.S.C. §1125(c) .......... 13, 20, 24, 28, 29
*Lanham Act* §32(a) .......... 13
*Lanham Act* §43(a) .......... 13
*Lanham Act* §43(c) .......... 23
*California Business & Professions Code* §17200 .......... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

Plaintiff SENNHEISER ELECTRONIC CORPORATION, d/b/a SENNHEISER USA and SENNHEISER ELECTRONIC GMBH & Co. KG ("Plaintiff", "SENNHEISER") is acknowledged as one of the world's leading manufacturers in microphone technology, RF-wireless and infrared sound transmission, headphone transducer technology, and active noise cancellation technology. *See* Complaint ("Compl.") at ¶12.

Plaintiff SENNHEISER manufactures a wide variety of electronic sound products for personal and professional use, including handheld microphone transmitters, body-pack transmitters, plug-on transmitters for wired microphones, broadcasters and receivers, sound quality monitors, wireless instrument systems, lavalier microphones, head-worn microphones, antenna kits, tour guide systems, listening systems, monitoring systems, conference systems, aviation headsets, instrument mics, vocal microphones, gooseneck microphones, studio/recording microphones, camera microphones, special application microphones, DJ headphones, professional headsets and headphones, gaming headsets and headphones, call center headphones and headsets, speakers, amplifiers and numerous accessories corresponding thereto. Plaintiff SENNHEISER, as sales subsidiary of Plaintiff SENNHEISER ELECTRONIC, distributes varieties of Sennheiser® products throughout the United States of America. Compl. at ¶13; *see* Declaration of Jason R. Vener ("Vener Decl.") ¶2.

SENNHEISER is the exclusive owner of federally-registered and Common law trademarks. The following is a partial (non-exhaustive) list of the registered trademarks owned by SENNHEISER (the "Marks"): Comp. at ¶19.

A. Sennheiser®: Registration date August 16, 1966 (Reg. No. 0813211), held by Plaintiff SENNHEISER USA;

///

B. Sennheiser®: Registration date December 11, 1984 (Reg. No. 1308693), held by Plaintiff SENNHEISER USA; and

C. Sennheiser®: Registration date November 30, 1993 (Reg. No. 1807190), held by Plaintiff SENNHEISER ELECTRONIC.

SENNHEISER has spent substantial time, money and effort in developing consumer recognition and awareness of its Marks. SENNHEISER has spent an enormous amount of money on print and internet advertising in order to inform consumers of the benefits of its products. Through the extensive use of the SENNHEISER's Marks, it has built up and developed significant goodwill in its entire product line. A wide array of newspapers, magazines and television networks has included advertising of SENNHEISER's products, which are immediately identified by its marks. Comp. at ¶14.

Beginning on a date that is currently unknown to SENNHEISER and continuing to the present, APEX has, without the consent of SENNHEISER, offered to sell and sold within the United States (including within this judicial district) goods that were neither made by SENNHEISER nor by a manufacturer authorized by SENNHEISER (such goods are hereafter referred to as "Counterfeit Goods") using reproductions, counterfeits, copies and/or colorable imitations of one or more of the Marks. On information and belief, SENNHEISER further alleges that APEX imported said Counterfeit Goods into the United States, or encouraged others to import said Counterfeit Goods into the United States, for the purpose of reselling the Counterfeit Goods in the United States. Compl. at ¶23.

SENNHEISER investigates and enforces against the manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing of counterfeit, or otherwise unauthorized, versions of its Sennheiser® -branded products. Compl. at ¶24-25.

APEX maintains and operates a storefront or webpage on Amazon.com under the username "ApexSuppliers." Through this webpage, APEX regularly

and systematically advertised, marketed, distributed and sold products bearing unauthorized Sennheiser® registered trademarks. Vener Decl. ¶4, Exh. "A" thereto.

On March 6, 2012, in its ongoing investigation of counterfeit sales of Sennheiser® branded products, from the State of California, SENNHEISER purchased a "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" from APEX, for a cost of $30.99. Compl. at ¶25, Vener Decl. ¶5, Exh. "B" thereto.

The product purchased from APEX was inspected by SENNHEISER to determine its authenticity. SENNHEISER's inspection of the purchased item using security measures confirmed that the item APEX sold to the investigator was in fact a counterfeit "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones". Compl. at ¶25, Vener Decl. ¶6 Exhs. "C" and "D."

Plaintiff filed its Complaint against CAROLINE EICHLER ("EICHLER") and APEX on December 18, 2012, and APEX was served with a copy of the Summons and Complaint on January 22, 2013 through NRAI Services, Inc., its registered agent for service of process. Vener Decl. ¶8.

On or about January 25, 2013, Plaintiff was served with notice that Defendant EICHLER had previously initiated a Chapter 7 Bankruptcy action, and that Plaintiff was named as an additional creditor to the petition on January 24, 2013. On February 1, 2013, Plaintiff notified this Court of the bankruptcy proceeding. Vener Decl. ¶9.

Pursuant to Rule 55 of the *Federal Rules of Civil Procedure* (*"Fed.R.Civ.P."*), a party seeking default judgment must first have the clerk enter the default. *Fed.R.Civ.P.* 55(a). SENNHEISER requested entry of default against APEX on February 20, 2013, and the clerk entered default of said Defendant on February 21, 2013. Vener Decl. ¶10.

///

On March 6, 2013, Plaintiff filed an Ex-Parte Application seeking Leave for Early Discovery prior to a scheduled Rule 26(f) Conference in order to properly determine the extent of the damages sustained by Plaintiff. Following this Court's Order granting the Ex-Parte Application, Plaintiff served a subpoena on third party Amazon.com seeking APEX's sales records. Vener Decl. ¶11.

On March 28, 2013, Defendant EICHLER received a discharge of debt from the United States Bankruptcy Court, District of New Hampshire. Plaintiff has filed concurrently with this motion a Status Report re: Bankruptcy Proceedings and Notice of Discharge of Debtor as to EICHLER. Vener Decl. ¶12. Exh. "E"

On April 23, 2013, Plaintiff received a response to the subpoena from Skylee Robinson of STOEL RIVES, LLP, the attorneys for third party Amazon.com, including an extensive log of all sales transactions made by APEX via Amazon.com. This log is exceptionally detailed and provides information concerning, *inter alia*, when the products were purchased, when the products were shipped, the quantity sold, the product description, product identification (ASIN) number, and the item price. In the interest of judicial economy, Plaintiff has sorted and isolated the spreadsheet specific to 9 pages detailing completed sales of counterfeit SENNHEISER® products, as well as the first page of the spreadsheet to distinguish the information provided in each column, thereby totaling 10 pages. Should the Court deem it necessary, Plaintiff will lodge the entire contents of the spreadsheet. According to the transaction log provided by Amazon.com, APEX sold no less than four hundred thirty six (436) counterfeit Sennheiser® products, between January 2010 through September 2012 on Amazon.com, under seller ID "ApexSupplier." Vener Decl. at ¶13, and Exh. "F"

## II. LEGAL STANDARD

Sufficient grounds exist for the entry of a default judgment against APEX. The Ninth Circuit has enumerated several factors the Court should consider in

deciding whether to grant default judgment: the possibility of prejudice to the plaintiff, the merits of plaintiff's substantive claim, the sufficiency of the complaint, the sum of money at stake in the action, the possibility of a dispute concerning material facts, whether the default was due to excusable neglect, and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See* Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir.1986). In considering the above factors, the Court takes all factual allegations in the Complaint as true, except for those relating to damages. *See* TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir.1987).

## III. ANALYSIS OF EITEL FACTORS

Application of the facts in this matter to the Eitel factors warrant entry of a default judgment in favor of Plaintiff.

### A. Prejudice to Plaintiff

In light of the fact that APEX has not appeared and defended itself in this action, absent a default judgment, SENNHEISER will not be compensated for its losses and will accordingly be prejudiced. Moreover, if this Court fails to enter a default judgment against APEX, in light of its failure to defend this action, it will set a devastating precedent allowing infringers to avoid liability by effectively not responding to SENNHEISER's claims further prejudicing its ability to enforce its intellectual property rights. Furthermore, in the absence of injunctive relief, SENNHEISER will continue to suffer harm from the violations committed by APEX of its trademark rights.

Accordingly, this first Eitel factor, the possibility of prejudice to SENNHEISER, weighs in favor of granting default judgment.

### B. Plaintiff's Substantive Claims are Meritorious

(Analyzed below, under, and concurrent with, subsection C.)

### C. Sufficiency of Plaintiff's Complaint

The second and third Eitel factors, concerning the merits of

SENNHEISER's substantive claims and the sufficiency of its Complaint, also weigh in favor of granting a default judgment in favor of SENNHEISER against APEX.

SENNHEISER has alleged six (6) causes of action in its Complaint against APEX, to wit: (1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. §1114/*Lanham Act* §43(a)]; (2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION [15 *U.S.C.* §1125(a)/*Lanham Act* § 43(a)]; (3) TRADEMARK DILUTION [15 *U.S.C.* §1125(c)]; (4) UNFAIR BUSINESS PRACTICES [*CALIFORNIA BUSINESS & PROFESSIONS CODE* §17200]; (5) UNJUST ENRICHMENT; and (6) DECLARATORY RELIEF.

**1. Trademark Infringement Claim**

The essential elements of the infringement of trademark registration and false designation of origin claims are identical. *See* Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir.1999). Moreover, the 9th Circuit has consistently held that actions pursuant to *California Business & Professions Code* §17200 are "substantially congruent" to claims made under the Lanham Act. *See* Philip Morris v. Shalabi, 352 F.Supp.2d 1067, 1072 (C.D.Cal.2004). Therefore, analyzing the merits of the infringement claims is sufficient because the standard of infringement, i.e., the likelihood of confusion, is essentially implicated in the remaining federal and state causes of action. *See* M2 Software, Inc. v. Madacy Entertainment Corp., 421 F.3d 1073, 080 (9th Cir.2005).

To prove a claim of trademark infringement under Section 43(a) of the *Lanham Act*, a plaintiff must show that: (1) it owns the trademark at issue, (2) the defendant has used in commerce, without authorization, a copy, reproduction, counterfeit or colorable imitation of the plaintiff's mark in connection with the sale, distribution, or advertising of goods and services, and (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive. *See* 15

*U.S.C.* § 1114(1). In its Complaint, SENNHEISER alleges all facts necessary to prove trademark infringement, along with false designation of origin and unfair business practices, by APEX. *See* Complaint generally.

**(a) Plaintiff's ownership of trademarks at issue**

First, SENNHEISER adequately alleges its ownership of three (3) trademarks at issue. Compl. at ¶19, and Exh. "A"-"C," thereto. A federal registration of a mark constitutes prima facie evidence of its validity and of plaintiff's exclusive rights to the mark. *See* Brookfield Communications, 174 F.3d at 1047.

**(b) Defendant's use of Plaintiff's trademarks in commerce**

Second, the "use in commerce" requirement is satisfied as to APEX. SENNHEISER alleges that APEX sold counterfeit "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" on Amazon.com for a cost of $30.99, and that APEX used images confusingly similar or identical to SENNHEISER's registered trademarks without consent or authorization to sell the counterfeit Sennheiser® "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" headphone. Compl. at ¶¶21, 23-25; Vener Decl. ¶4-5, Exhs. "A" – "B" thereto.

**(c) Likelihood of confusion**

The third element of trademark infringement is the likelihood of confusion, or whether the similarity of the marks is likely to confuse customers about the source of the products. *See* E & J Gallo Winery v. Gallo Cattle, 967 F.2d 1280, 1290 (9th Cir.1992). Likelihood of confusion is analyzed using an eight-factor test established by the Ninth Circuit, i.e.: (i) strength of the allegedly infringed mark; (ii) proximity or relatedness of goods; (iii) similarity of sight, sound, and meaning of marks; (iv) degree to which marketing channels converge; (v) type of goods and degree of care consumers are likely to exercise in purchasing goods; (vi)

intent of the defendant in selecting the allegedly infringing mark; (vii) evidence of actual confusion and likelihood that the parties will expand their product lines; and (viii) conclusion. *See* AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-349 (9th Cir.1979). Applying this test to SENNHEISER's Marks and APEX's infringement thereof by selling counterfeit "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" should lead this Court to conclude that SENNHEISER has successfully pled a likelihood of confusion.

(i) Strength of the allegedly infringed marks

The strength of SENNHEISER's Sennheiser® Marks is adequately alleged in its pleadings and weighs in favor of a likelihood of confusion.

The strength of a mark is based on the distinctiveness of the mark and whether it has acquired secondary meaning, i.e., whether it has come to be associated with a good or service. *See* Gallo Cattle, 967 F.2d at 1291. A long-standing principle of trademark law is the right of a person to use his or her own name in connection with a business. *See Howe Scale Co. v. Wyckoff, Seamans & Benedict,* 198 U.S. 118, 140 (1905). This principle was incorporated into the Lanham Act, which states that a mark that is "primarily merely a surname" is not protectable unless it acquires secondary meaning. 15 U.S.C. § 1052(e)(4), (f) (1994); *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 104 (2d Cir.1985); *see L.E. Waterman Co. v. Modern Pen Co.,* 235 U.S. 88, 94 (1914) (pre-Lanham Act case stating that protection from confusion is available to the holder of a surname trademark that has acquired public recognition); *Horlick's Malted Milk Corp. v. Horluck's, Inc.,* 59 F.2d 13, 15 (9th Cir.1932) (pre-Lanham Act case limiting the defendant's right to use his surname as a trademark where the name had acquired public recognition from the efforts of a competitor). Sennheiser is the surname of the founder of SENNHEISER, Fritz Sennheiser. This surname has acquired secondary meaning and distinctiveness since its initial use in 1945.

The length of time that SENNHEISER has used its mark in the marketplace

establishes the strength of the mark. SENNHEISER alleges in its Complaint that it has been using the term Sennheiser® as a trademark since as early as 1966. Compl. at ¶19. Thus, the mere duration of its use in the marketplace, establishes that it is a strong mark, which makes consumer confusion more likely. *See* Joujou Designs, Inc. v. Jojo Ligne Internationale, 821 F.Supp. 1347, 1353-1354 (N.D.Cal.1992).

Moreover, SENNHEISER has spent substantial time, money and effort in developing consumer recognition and awareness of its marks and products. SENNHEISER has spent an enormous amount of money on print and internet advertising in order to inform consumers of the benefits its products and services. Through the extensive use of SENNHEISER's Marks, it has built up and developed significant goodwill in its entire electronic product line. Compl. at ¶¶14, 18.

A wide array of newspapers, magazines and television networks have included advertising of SENNHEISER's electronic products, which are immediately identified by its Sennheiser® Marks. SENNHEISER's products are widely recognized as the industry standard for sound quality and excellence. Compl. at ¶¶14-15.

SENNHEISER's products are used and have been used by a wide variety of professional performers and professional performance organizations. At the 2010 Grammy Awards, numerous artists used SENNHEISER's microphones to both present and perform, including well-known artists Beyonce, Pink, Dave Mathews, Black Eyed Peas, Zac Brown Band, Lady Antebellum, Roberta Flack, and Andrea Bocelli. Compl. at ¶15. In addition, SENNHEISER's wired and wireless microphones and wireless personal monitors are being used by the rock musical group The Scorpions on their colossal multi-year farewell tour around the globe. Compl. at ¶16. Furthermore, numerous successful music performing artists, referred to as "Sennheiser artists," exclusively use Sennheiser® products. *Id.*

Moreover, SENNHEISER's wireless transmitters and receivers are recognized by the stage performance community. Since its very beginning, the production crew of the hit Broadway show "Wicked" has relied on these very same products in all of the shows performances. Compl. at ¶17.

SENNHEISER also uses the goodwill associated with its marks in an effort to bring awareness to social causes and issues. For example, SENNHEISER co-sponsored the "Music City Gives Back," free concert that took place in Nashville on June 7, 2011. The proceeds of that event were for the benefit of the American Red Cross Disaster Relief Fund. Compl. at ¶18.

As a result of SENNHEISER's efforts, the high degree of promotion and the quality and popularity of its Sennheiser® - branded products, SENNHEISER's products have been prominently placed in the minds of the public. Consumers, purchasers and the members of the public have become familiar with SENNHEISER's intellectual property, and its products, and have come to recognize and associate Sennheiser® products' Marks exclusively with SENNHEISER– it has acquired a valuable reputation, goodwill and substantial distinctiveness among the public as a result of such association. Compl. at ¶12-18.

(ii) Proximity or relatedness of goods

The second factor, the proximity or relatedness of SENNHEISER's authentic Sennheiser® branded products therein, and APEX's counterfeit versions thereof, also points toward a likelihood of confusion. The more related or complementary goods are, the higher the danger of consumer confusion. *See* Gallo Cattle, 967 F.2d at 1291. Here, the infringed marks and infringing marks appear on identical goods – headphones. More specifically, APEX's "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" offered for sale bear the Sennheiser® Marks. Vener Decl. ¶6, and Exh. "D" (APEX's infringing "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones").

/ / /

(iii) Similarity of sight, sound, and meaning of marks

The third factor, similarity of sight, sound, and meaning of the marks also supports a finding of likelihood of confusion. Where, as here, the products bearing the disputed marks are identical, even less similarity is required to demonstrate a likelihood of confusion. *See* Sleekcraft, 599 F.2d at 350. Given this low standard, SENNHEISER has easily and adequately demonstrated that the marks are similar. Marks should be compared based on their sight, sound, and meaning as they appear in the marketplace, and similarities between marks should be weighed more heavily than differences. *See* Sleekcraft, 599 F.2d at 350. SENNHEISER has submitted photographs of the counterfeit product purchased from APEX with the Sennheiser® marks prominently and clearly displayed. Vener Decl. at ¶6, and Exh "D" (photographs of APEX's infringing counterfeit "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones"). Under the lower standard for marks used for identical products, APEX's use of SENNHEISER's authentic Sennheiser® marks is sufficiently similar in sight, sound, and meaning.

(iv) Degree to which marketing channels converge

In considering the marketing channels used by SENNHEISER and APEX, the channels largely overlap, which makes consumer confusion more likely. SENNHEISER markets its authentic Sennheiser® products on its Internet website: www.sennheiserusa.com. Vener Decl. ¶7. APEX sold its counterfeit "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" on Amazon.com, seller ID "ApexSuppliers"; thus, reaching the same type of potential consumer as SENNHEISER. Vener Decl. ¶4, and Exh. "A" thereto.

///

///

///

(v) Type of goods and degree of care consumers are likely to exercise in purchasing goods

The goods in question in the instant case are SENNHEISER's ""Sennheiser PMX80 Sport II" headphones. SENNHEISER's "Sennheiser PMX80 Sport II" headphones are relatively affordable and moderately priced. Vener Decl. ¶7. Thus, the presumption that buyers of expensive products exercise greater care is not applicable here.

(vi) Intent of the Defendant in selecting the allegedly infringing mark

Though bad intent is not necessary to demonstrate a likelihood of confusion, where the plaintiff establishes that APEX knowingly used an infringing mark, there is a presumption that the infringer will accomplish its purpose, and the public will be deceived. *See* Sleekcraft, 599 F.2d at 354. SENNHEISER filed its Complaint against APEX on December 18, 2012, and APEX was served with a copy of the Summons and Complaint on January 22, 2013. Vener Decl. ¶8. APEX's failure to defend against SENNHEISER's Complaint, which includes allegations of bad faith, intent, and willful conduct, *see* Compl. at ¶21, 23-24, 28-31, is indicative of APEX's knowledge regarding the source of its infringing products and the counterfeit nature of the products he sold.

(vii) Evidence of actual confusion and likelihood that the parties will expand their product lines

Consumers are being confused everyday by Internet auction site sellers such as APEX. Counterfeit versions of SENNHEISER's Sennheiser® PMX80 Sport II headphones, like those sold by APEX, have flooded the market leading consumers to believe that the counterfeit versions being sold are, in fact, authentic when they clearly are not. Vener Decl. at ¶4-6, and Exhs. "A" and "D" thereto. SENNHEISER has no evidence with respect to whether APEX will expand its product line.

(viii) Conclusion

Taking all the allegations of the Complaint as true, SENNHEISER has adequately pled and demonstrated that its Sennheiser® "PMX80 Sport II" headphones would likely be confused with APEX's use thereof on counterfeit versions of SENNHEISER's product thereof.

**2. Trademark Dilution Claim**

In order to prove federal trademark dilution, a plaintiff must show that: the mark at issue is famous, the defendant is making a commercial use of the mark in commerce, the defendant's use began after the mark became famous, and the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *See* Panavision, Int'l v. Torppen, 141 F.3d 1316, 1324 (9th Cir.1998).

In deciding whether a mark is famous, the courts will look to the following factors: (1) the degree of inherent or acquired distinctiveness; (2) the duration and extent of use; (3) the amount of advertising and publicity; (4) the geographic extent of the market; the channels of trade; (5) the degree of recognition in trading areas; any use of similar marks by third parties; and (6) whether the mark is registered. 15 *U.S.C.* § 1125(c); *see also* Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026 (2nd Cir.1989). Once the prerequisites for dilution claims are satisfied, the owner of a mark can bring an action against any use of that mark that dilutes the distinctive quality of that mark, either through "blurring" or "tarnishment." Tarnishment occurs when the mark is cast in an unflattering light, typically through its association with inferior or unseemly products or services. *See* Toys "R" Us v. Akkaoui, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996).

**(a) Plaintiff's ownership of famous marks**

SENNHEISER's Sennheiser® branded products, and specifically the "PMX80 Sport II", particularly in light of the company's advertising, as well as

consumer word of mouth referrals, gives the effectiveness to its products. SENNHEISER has spent substantial time, money and effort in developing consumer recognition and awareness of its marks, and products. SENNHEISER has spent an enormous amount of money on print and internet advertising in order to inform consumers of the benefits its products. Compl. at ¶14. Through the extensive use of the SENNHEISER's Marks, it has built up and developed significant goodwill in its entire product line. Compl. at ¶¶14-18.

SENNHEISER's products are widely recognized as the industry standard for sound quality and excellence. Compl. at ¶14. SENNHEISER's products are used and have been used by a wide variety of professional performers and professional performance organizations. At the 2010 Grammy Awards, numerous artists used SENNHEISER's microphones to both present and perform, including well-known artists Beyonce, Pink, Dave Mathews, Black Eyed Peas, Zac Brown Band, Lady Antebellum, Roberta Flack, and Andrea Bocelli. Compl. at ¶15. SENNHEISER's wired and wireless microphones and wireless personal monitors are being used by The Scorpions on their colossal multi-year farewell tour around the globe. Furthermore, numerous successful music performing artists, referred to as "Sennheiser artists," exclusively use Sennheiser® products. Compl. at ¶16. SENNHEISER's wireless transmitters and receivers are recognized by the stage performance community. Since its very beginning, the production crew of the hit Broadway show "Wicked" has relied on these very same products in all of the shows performances. Compl. at ¶17.

As a result of SENNHEISER's efforts, the high degree of promotion and the quality and popularity of Sennheiser® products have been prominently placed in the minds of the public. Consumers, purchasers and the members of the public have become familiar with the SENNHEISER's intellectual property, and its products, and have come to recognize the Sennheiser® marks, products and services and associate them exclusively with Plaintiff – Plaintiff has acquired a

valuable reputation and goodwill among the public as a result of such association. Indeed, the Sennheiser® products marks are famous in the United States. Compl. at ¶¶14-18.

**(b) Defendant's commercial use of Plaintiff's famous marks**

On March 6, 2012, SENNHEISER purchased a purported "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" from APEX, for a cost of $30.99. Compl. at ¶25, and Exh. "D," thereto; Vener Decl. ¶5, and Exh. "B," thereto. The product purchased from APEX was inspected to determine authenticity. The inspection of the purchased item confirmed that the item APEX sold to the investigator was, in fact, counterfeit and unauthorized "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones". Compl. at ¶28; Vener Decl. ¶6.

**(c) Defendant's use began after Plaintiff's marks were famous**

SENNHEISER uses its Sennheiser® "PMX80 Sport II" headphones, among other products, and has been using its Sennheiser® trademarks since as early as 1966.

APEX sold no less than four hundred thirty six (436) counterfeit Sennheiser® products, between January 2010 through September 2012 on Amazon.com, under seller ID "ApexSupplier." Vener Decl. ¶13, and Exh. "F" (Amazon.com Transaction log for APEX). In addition to these documented sales, SENNHEISER has shown that APEX's sales of counterfeit and unauthorized Sennheiser® products continued up to as late as March 6, 2012. Vener Decl. ¶5 Ex. "B", thereto.

///

///

///

**(d) Defendant's use tarnishes the quality of Plaintiff's marks**

APEX has tarnished SENNHEISER's Sennheiser® trademarks by selling inferior quality counterfeit merchandise bearing SENNHEISER's famous marks. Tarnishment occurs when the mark is cast in an unflattering light, typically through its association with inferior or unseemly products or services. *See* Toys "R" Us v. Akkaoui, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996). APEX has cast SENNHEISER's marks in an unflattering light by offering for sale, selling, and distributing counterfeit versions of SENNHEISER's "PMX80 Sport II" headphones bearing SENNHEISER's Sennheiser® trademarks.

**D. Sum of Money at Stake**

The prevailing party in an action for willful trademark infringement and willful trademark dilution is entitled to, *inter alia*, statutory damages, reasonable attorney's fees, recovery of costs, and appropriate injunctive relief. SENNHEISER has alleged in its Complaint that APEX engaged in intentional, knowing, and willful acts of infringement of SENNHEISER's Sennheiser® trademarks, and intentionally and knowingly diluted said trademarks. APEX has failed to respond to these serious allegations despite notice thereof.

The Court should therefore find that pursuant to the relevant sections of the *Lanham Act*, and the facts established by SENNHEISER for purposes of this motion, an enhancement of electable statutory damages is warranted, in addition to attorneys' fees and costs, thereby putting a total of no less than $6,000,000.00 of statutory damages at stake.

**1. Statutory Damages for Trademark Infringement and Trademark Dilution**

The *Trademark Act* provides that in a case involving the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services, or any willful violation under section 43(c) of the *Lanham Act*

(15 *U.S.C.* 1125(c)), the plaintiff may elect to recover statutory damages in the amount of not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of goods sold, offered for sale, or distributed. 15 *U.S.C.* §1117(c)(1). SENNHEISER seeks maximum statutory damages of $200,000.00 for each of APEX's use of each of SENNHEISER's Sennheiser® trademarks. In addition, if the Court finds that the use of the counterfeit mark was willful, the plaintiff may be granted an award of statutory damages of not more than $2,000,000.00 per counterfeit mark per type of goods sold, offered for sale, or distributed. 15 *U.S.C.* §1117(c)(2). SENNHEISER has alleged that APEX's use was willful, an allegation that APEX has failed to respond to, and SENNHEISER has provided evidence to show that APEX knew, or should have known, that the purported "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" it was selling were, in fact, counterfeit. SENNHEISER's evidence would have been more substantial had APEX responded to its Complaint. With this Court's authorization, through discovery, SENNHEISER has subpoenaed APEX's transaction records from Amazon.com in order to obtain a full and complete accounting of all APEX's counterfeit and unauthorized sales of Sennheiser® products. Vener Decl. at ¶¶11, 13. and Ex. "F" thereto.

Notwithstanding the foregoing, based upon the evidence included in support of this motion SENNHEISER seeks statutory damages of $200,000.00 for APEX's infringing use of each of SENNHEISER's Sennheiser® trademarks totaling $600,000.00 for trademark infringement and dilution pursuant to 15 *U.S.C.* § 1117(c)(1).

**E. <u>No Possibility of Dispute Concerning Material Facts</u>**

There is no information before the Court concerning a possible dispute of material facts because APEX has not appeared in this action.

**F. <u>Default Not Due to Excusable Neglect</u>**

APEX's default in this matter was not due to excusable neglect.

SENNHEISER's Complaint was filed on December 18, 2012, and APEX was served with a copy of the Summons and Complaint on January 22, 2013 through NRAI Services, Inc., its registered agent for service of process. Vener Decl. ¶8. Default was entered against APEX by the Clerk on February 21, 2013. Vener Decl. at ¶10.

### G. Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's Right to Relief

Any policy in favor of deciding cases on the merits does not outweigh SENNHEISER's rights to relief in this matter. APEX had every opportunity to defend itself in this action, or otherwise respond to SENNHEISER's Complaint, despite notice thereof. Favoring this policy of deciding cases on the merits in the case before this Court would effectively condone and reward APEX, which refused to appear in order to decide the case on the merits. Moreover, APEX's failure to defend itself in this matter has limited SENNHEISER's access to evidence to support its claims against APEX.

## IV. REMEDIES

SENNHEISER is required to prove all damages sought in the Complaint. *Fed.R. Civ.P.* 54(c); *see also* Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003). In determining damages, a court can rely on the declarations submitted by SENNHEISER or order a full evidentiary hearing. *Fed.R. Civ.P.* 55(b)(2). SENNHEISER's burden in "proving up" damages is relatively lenient. *See* Philip Morris, 219 F.R.D. at 498. In this instance, SENNHEISER seeks statutory damages, reasonable attorney's fees, costs, and a permanent injunction for APEX's willful infringement of SENNHEISER's Sennheiser® trademarks.

### A. Statutory Damages

SENNHEISER seeks a statutory award of not less than $600,000.00 as compensation for SENNHEISER's damages, as a punishment for APEX's willful

conduct, and as a deterrent to future infringement by APEX and other pirates, infringers and counterfeiters.

Under the *Lanham Act*, where a court finds that the use of a counterfeit mark was willful, statutory damages "not more than $2,000,000 for counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" are available. 15 *U.S.C.* §1117(c). While willful infringement requires "knowledge that the defendant's conduct constitutes trademark infringement," Peer Int'l Corp. v. Pausa Records, Inc., 909 F. 2d 1332, n.3 (9th Cir. 1990), willfulness can be inferred from a defendant's failure to defend. *See* Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501 (C.D. 2003). It should also be noted that "[c]ourts faced with determining statutory damages under the [Lanham] Act have analogized to the body of case law interpreting similar provisions in the Copyright Act." *See* Philip Morris, 219 F.R.D. at 501. The Supreme Court has held that deterrence of future infringement is an important factor in determining damages under the Copyright Act, stating that:

> "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of copyright policy. The statutory rule, formulated after long experience not merely compels restitution of profit and reparation for injury, but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purpose. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within the statutory limits to sanction and vindicate the statutory policy." *Id.* (applying copyright statutory damages jurisprudence to the *Lanham Act* and *citing* F.W. Woolsworth Co. v. Contemporary Arts, 344 U.S. 228, 233 (1952)).

In determining whether the amount of statutory damages sought is

reasonable, courts will look to see if the amount is calculated to serve the purposes of awarding statutory damages, including compensation for lost profits, punishment of willful infringing conduct, and the deterrence of infringing activity. *See* Philip Morris, 219 F.R.D. at 501-502. However, a plaintiff may elect statutory damages for copyright infringement, and therefore, trademark infringement "regardless of the adequacy of the evidence offered as to his actual damages and the amount of Defendant's profits." *See* Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., F.3d 1186, 1194 (9th Cir. 2001).

SENNHEISER's demand of no less than $600,000.00 dollars is reasonably calculated to accomplish the purposes of awarding statutory damages. SENNHEISER has set forth adequate evidence, in both the Complaint and by way of declaration to establish that APEX's conduct was willful. APEX failed to comply with the judicial process and has not in any way participated in the present litigation. This allows for the inference that APEX's conduct was in fact willful. *See* Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501(C.D. 2003) (holding that defendant willfully infringed plaintiff's trademark based on plaintiff's allegations of willful infringement and defendant's "failure to comply with the judicial process or to participate in any way in the litigation"). Additionally, willfulness can be inferred from the declarations and exhibits attached to this application for default judgment. *Fed.R. Civ.P.* 55(b)(2); *see also* Adobe System Inc. v. Brooks, 3 2009 WL 593343 (N.D. 2009) (Unpublished). The transaction log from Amazon.com evidences APEX's sale of no less than four hundred thirty six (436) counterfeit Sennheiser® products, between January 2010 through September 2012 on Amazon.com, under seller ID "ApexSupplier." Vener Decl. at ¶13, and Exh. ""F," thereto. Given that SENNHEISER's investigator received counterfeit "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones" headphones from APEX, and given the price at which APEX offered for sale and sold its purported "Sennheiser PMX80 In-ear

Sport Series II Behind the Head Earphones", it is inferable that all of its Sennheiser® - branded product therein, sold by APEX are indeed counterfeit. Vener Decl. ¶4-6, 13, Exhs. "A" – "D" and "F" thereto. This evidence more than suggests that APEX's conduct was not only knowledgeable, but purposeful, entitling SENNHEISER to the maximum allowable statutory damages.

However, SENNHEISER is not asking for the maximum allowable statutory damages. SENNHEISER has alleged that APEX has willfully infringed SENNHEISER's registered Sennheiser® marks. Under the *Lanham Act*, this would allow for a maximum of $6,000,000.00 dollars in statutory damages. Yet, SENNHEISER only seeks $600,000.00 in statutory damages for trademark infringement. With the imposition of this award, SENNHEISER seeks to deter APEX and similarly situated counterfeiters, pirates and infringers from bringing into commerce counterfeit Sennheiser® branded products, specifically "Sennheiser PMX80 In-ear Sport Series II Behind the Head Earphones," and from exhibiting total disregard for the *Federal Rules of Civil Procedure*. SENNHEISER also seeks compensation for damages (the total extent of which cannot be known as APEX has failed to participate in this litigation) caused by APEX's infringement and to punish APEX appropriately for its extensive piratical activities (the true extent of which is also unknown to SENNHEISER as APEX has failed to meaningfully take part in this litigation).

Accordingly, $600,000.00 (i.e. 10% of the total allowable statutory damages) is reasonably calculated to accomplish the purposes of providing statutory damages under the *Lanham Act*.

**B. Costs**

Pursuant to 15 *U.S.C.* §1117(a), SENNHEISER is entitled to judgment against said APEX for recovery of total costs SENNHEISER has incurred in this action due to APEX's violation of 15 *U.S.C.* §1125(a) and willful violation of 15 *U.S.C.* §1125(c) in the amount of $523.00. Vener Decl. ¶14.

**C. Attorneys' Fees**

Pursuant to 15 *U.S.C.* §1117(a), SENNHEISER is entitled to judgment against APEX for reasonable attorneys' fees incurred by SENNHEISER in the prosecution of this action, due to the "exceptional circumstances" surrounding APEX's willful violation of 15 *U.S.C.* §1125(c). *See* Lindy Pen Co. v. Bic Pen Corp., 982 F. 2d 1400, 1409 (9th Cir. 1993) (stating that a case is "exceptional" when infringement is "malicious, fraudulent, deliberate, or willful."); *see also* Taylor Made Golf Co., Inc., v. Carsten Sports Ltd., 175 F.R.D. 658 (holding that a case may be deemed "exceptional," and merit an award of attorney's fees under the Lanham Act, when APEX disregards the proceedings and does not appear). Pursuant to 15 *U.S.C.* §1117(b), SENNHEISER is also entitled to judgment against APEX for reasonable attorneys' fees due to APEX's willful violation of 15 *U.S.C.* §1114(1)(a) (as provided for under 15 *U.S.C.* §1117(e)). Under Local Rule 55-3, attorneys' fees shall be calculated according to a fee schedule based upon the amount of the default judgment absent costs. Pursuant to the Local Rules, SENNHEISER is entitled to $5,600.00 in attorneys' fees. Vener Decl. ¶15.

**D. Injunctive Relief**

The Lanham Act gives the Court "[p]ower to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 *U.S.C.* § 1116(a); *see also* PepsiCo Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1177-78 (C.D. Cal. 2002). SENNHEISER seeks an injunction covering three items listed below as they relate to prevention of future infringing activity.

SENNHEISER is entitled to a permanent injunction against APEX and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from APEX, or in concert or participation with APEX: (1) enjoining and permanently restraining APEX from manufacturing, advertising, distributing, offering for sale,

selling, whether directly or indirectly, counterfeit Sennheiser® - branded products, including any merchandise of any kind bearing SENNHEISER's marks or names that are confusingly similar to the trademarks, trade names, designs or logos of SENNHEISER; (2) enjoining and permanently restraining APEX from using SENNHEISER's marks or any copy, reproduction, or colorable imitation, or confusingly similar simulation of SENNHEISER's marks on or in connection with the promotion, advertising, distribution, manufacture or sale of APEX's goods; (3) ordering APEX to cancel, withdraw and recall all its promotions, advertisements and merchandise bearing SENNHEISER's marks or any confusingly similar simulation to SENNHEISER's marks, which have been published, placed or shipped by APEX or under APEX's authority, to any person, entity, or customer, including, without limitation, any publisher, agency, wholesaler, distributor, retailer, consignor or marketer, and also deliver to each publisher or customer a copy of this Court's order as it relates to said injunctive relief against APEX.

///

///

///

## V. CONCLUSION

For the foregoing reasons and in the manner set forth above, the Court should grant Plaintiff's Motion for Entry of Default Judgment by Court against APEX for damages totaling no less than $600,000.00, plus fees and costs, along with the requested injunctive relief.

DATED: May 3, 2013

JOHNSON & PHAM, LLP

By: ______________________
Jason R. Vener, Esq.
Attorneys for Plaintiff
SENNHEISER ELECTRONIC CORPORATION d/b/a SENNHEISER and SENNHEISER ELECTRONIC GMBH & CO. KG

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Johnson & Pham 6355 Topanga Canyon Blvd., Suite 326, Woodland Hills, CA 91367. On May 3, 2013, I served the within document(s):

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT APEX SUPPLIERS, LLC; MEMORANDUM OF POINTS AND AUTHORITIES**

☐ BY ELECTRONIC SERVICE-Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed below who are registered with the Court's CM/ECF System.

☒ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

APEX Suppliers, LLC
c/o NRAI Services, Inc.
515 East Park Avenue
Tallahassee, FL. 32301

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 3, 2013, at Los Angeles, California.

Lee Ann Sowers